IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

TONY A. WILSON, :
　　　　　　　　　　　　　　　　　　　　:
　　　　Plaintiff, :
　　　　　　　　　　　　　　　　　　　　:
　　v. : Civ. No. 16-986-LPS
　　　　　　　　　　　　　　　　　　　　:
GREGORY P. SINNERS, et al., :
　　　　　　　　　　　　　　　　　　　　:
　　　　Defendants. :

Tony A. Wilson, Milford, Delaware, Pro Se Plaintiff.

**MEMORANDUM OPINION**

April 10, 2017
Wilmington, Delaware

STARK, U.S. District Judge:

## I. INTRODUCTION

Plaintiff Tony A. Wilson ("Plaintiff"), who proceeds *pro se* and has been granted leave to *proceed in forma pauperis*, commenced this action on October 24, 2016. (D.I. 1) He amended on December 14, 2016, and the Amended Complaint is the operative pleading. (D.I. 15) The Court has jurisdiction pursuant to 28 U.S.C. § 1331. The Court proceeds to review and screen the Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2). Presently before the Court are numerous motions filed by Plaintiff, including motions to amend, motions to compel, a motion for default, a motion for default judgment, and a motion for a preliminary injunction. (D.I. 13, 16, 18, 19, 20, 21, 22, 23, 29, 30, 31, 33)

## II. BACKGROUND

Plaintiff, who is black and an Internal Revenue Service ("IRS") employee, alleges employment discrimination, harassment, retaliation, and a hostile work environment. The Amended Complaint consists of 729 paragraph, names 24 Defendants, and contains 30 Counts. Throughout "Section IV Common Allegations," Plaintiff alleges that all adverse employment actions taken against him are the result of his color, race, and in retaliation for filing grievances. He alleges violations of: Title VII, 42 U.S.C. § 2000e(a)(1)(2); the parties' union contract(s); his right to equal protection under the Fourteenth Amendment to the United States Constitution; as well as regulatory, statutory, Internal Revenue Service, Internal Revenue Manual 6.752.2.9(2)(a)(b) provisions; and also under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(1); 42 U.S.C. § 1983; 42 U.S.C. § 1981; the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2675(a), 2679(b)(1); and the Family Medical Leave Act ("FMLA"). (D.I. 15 at ¶¶ 1-20, 88)

1

In May 2011, Plaintiff was questioned about attempting to access his tax files. *(Id.* at ¶ 74) The matter was closed due to Plaintiff committing the UNAX (*i.e.*, unauthorized access, attempted access or inspection of taxpayer records) before he had UNAX training. *(Id.)* Plaintiff informed Defendant Gregory Sinners ("Sinners"), his immediate supervisor, that he had attempted to access his tax file and that he had also accessed his wife's tax file. *(Id.* at ¶ 75)

In 2013, Plaintiff had a contact recording with an individual with whom he had worked approximately 20 years ago. *(Id.* at ¶ 77) Sinners listened to the contact recording and submitted the information to TIGTA (*i.e.*, U.S. Treasury Inspector General for Tax Administration) for investigation. *(Id.)* In March 2014, Plaintiff refused to participate in a criminal investigation against him that was conducted by Defendant Department of Treasury agent Dennis W. Martel ("Martel"). *(Id.* at ¶ 79) In March 2014, Sinners submitted to TIGTA, for investigation, information that Plaintiff had accessed his wife's tax files within three days of employment. *(Id.* at ¶ 76) Plaintiff alleges that he was subject to harassment based upon his race and retaliation after he refused to testify during a March 2014 TIGTA and, in November 2014, when he refused to participate in his 2012 and 2013 audit. *(Id.* at ¶ 73) Plaintiff received his mid-year evaluation on March 5, 2014. *(Id.* at ¶ 100.c.)

Plaintiff alleges that Defendants Mary Komenda ("Komenda"), an IRS employee, and IRS territory manager Millicent E. Anstead ("Anstead") violated his right to due process when they failed to provide him with a notice of the step two response issued to the NTEU (*i.e.*, National Treasury Employees Union) on March 23, 2014, concerning a grievance Plaintiff had submitted regarding his 2014 annual performance appraisal and the failure to investigate his charges of discrimination and retaliation. *(Id.* at ¶¶ 97, 97)

2

In June 2014, Plaintiff's tax returns were audited for the tax years 2012 and 2013. (*Id.* at ¶ 102) Plaintiff alleges that Martel directed an audit for Plaintiff's 2012 and 2013 tax years after Plaintiff refused to answer questions regarding Martel's allegations during the March 2014 interview. (*Id.* at ¶ 85) In August 2014, Sinners was informed that Plaintiff had amended his 2012 and 2013 tax returns, but Sinners and other Defendants directed that this information not be included in the 2012 and 2013 tax audits and the TIGTA investigation of the audits. (*Id.* at ¶¶ 103, 104)

On September 29, 2014 and July 17, 2015, Plaintiff made complaints regarding the contact recording and the March 2014 investigation. (*Id.* at ¶¶ 98, 99) In October 2014, Sinners included information in Plaintiff's 2014 annual evaluation that Plaintiff claims was improper and intended to keep an ongoing TIGTA investigation for over 13 months. (*Id.* at ¶¶ 100a. through h) Plaintiff refused to sign the evaluation and alleges that Sinners set out to retaliate against Plaintiff over Plaintiff's tax and audit issues. (*Id.* at ¶¶ 105-11) On February 17, 2015 and July 17, 2015, Plaintiff submitted a grievance regarding Sinners not contacting Plaintiff about hazardous conditions with Anstead and Strauch ("Strauch"). (*Id.* at ¶ 126)

On March 4, March 27, May 14, 2015, and July 17, 2015, Plaintiff requested updates on grievances he had submitted. (*Id.* at ¶¶ 127-29) Sinners closed the TIGTA investigation at the end of April 2015. (*Id.* at ¶ 92) Plaintiff alleges that Sinners denied him training and breached the 2012 National Agreement II entered into by the IRS and the NTEU. (*Id.* at ¶ 93) He alleges with regard to his 2014 annual performance appraisal grievance that he was denied his right to due process by Anstead and Komenda because they did not provide him notice that a step two response was issued to NTEU on March 20 or 23, 2015. (*Id.* at ¶ 134) On May 14, 2015 and July 17, 2015, Plaintiff requested an immediate transfer. (*Id.* at ¶¶ 130, 131)

On June 9, 2015, Plaintiff submitted an application for hardship reassignment/relocation request to Sinners, describing the hardship as stress/hostile work environment due to harassment on the basis of race. (*Id.* at ¶ 280) At the same time, Plaintiff submitted his resume for the position of bankruptcy specialist and indicated that he was currently representing a petitioner pro bono. (*Id.* at ¶ 81) Plaintiff alleges that, from May 28, 2015 thru June 26, 2015, Sinners and Anstead denied his request for leave under the FMLA, and they refused to complete and process his workers' compensation forms. (*Id.* at ¶¶ 88, 89) Plaintiff alleges that on July 17, 2015, Sinners, knowing that Plaintiff received nontaxable child support payments, falsely stated that Plaintiff remained under investigation by TIGTA for under-reporting his income on his federal income tax returns. (*Id.* at ¶¶ 114, 115) Plaintiff, who is a licensed attorney in the State of Pennsylvania, alleges that in July 2015, Sinners caused Plaintiff's review by the Disciplinary Board of the Supreme Court of the State of Pennsylvania and caused a Pennsylvania Judicial Center to provide a certification of record regarding Plaintiff's character. (*Id.* at ¶¶ 116, 117)

Plaintiff alleges that on August 10, 2015, Sinners and Anstead used the information to allege that Plaintiff conducted unauthorized business activities outside of his employment with the IRS. (*Id.* at ¶¶ 82, 112, 122, 124) Plaintiff alleges that he was representing a family member in bankruptcy court and that the child support income was nontaxable. (*Id.* at ¶¶ 120, 122) Plaintiff opted to participate in the investigation by written response only. (*Id.* at ¶ 83)

Plaintiff describes several contacts with Sinners during September and October 2015 as harassing and designed to "get Plaintiff fed-up enough to quit." (*Id.* at ¶¶ 132, 133, 137-43) On September 24, 2015, Plaintiff filed a formal charge of discrimination with the EEOC. (*Id.* at ¶ 69) Plaintiff alleges that on October 2, 2015, Sinners and Anstead retaliated against him when they conducted a fictitious leave audit and placed Plaintiff in LWOP (*i.e.*, leave without pay) status and

denied him 24 hours of pay. (*Id.* at ¶ 135) Plaintiff alleges that on October 9, 2015, Sinners improperly reviewed Plaintiff's contact recording in retaliation for filing an EEOC charge of discrimination against Sinners. (*Id.* at ¶ 136) Plaintiff alleges that on October 12, 2015, Sinners, Anstead, and Susan M. Quackenbush ("Quackenbush"), an IRS agent, resubmitted a false audit report and charged Plaintiff with owing taxes for the tax years 2012 and 2013. (*Id.* at ¶¶ 118, 119)

On October 19, 2015, Plaintiff was advised by Defendant Frontline Security Officer Kyle T. Furnas ("Furnas") that he had been instructed by Sinners to file a complaint against Plaintiff as a result of an incident that had occurred between Plaintiff and Sinners that same day. (*Id.* at ¶ 144) Plaintiff alleges that Sinners made false statements and filed a false report in retaliation for Plaintiff's previous complaints and EEOC charge of discrimination filed against Sinners. (*Id.* at ¶¶ 145, 146) Plaintiff alleges that Furnas and his supervisor, Defendant Robert L. Brown ("Brown"), republished Sinners' false statements to a Federal Protective Service inspector and investigator. (*Id.* at ¶ 149)

Plaintiff alleges that on October 28, 2015, he was informed by Anstead that he must answer TIGTA questions or face termination of his employment. (*Id.* at ¶¶ 151, 152) The next day, Plaintiff was questioned by a security officer about the Sinners incident. (*Id.* at ¶ 153) On October 30, 2015, Plaintiff submitted a notice that he was exercising his Fifth Amendment rights and would not testify during the TIGTA interview scheduled for November 4, 2015. (*Id.* at ¶ 154) The same day, Plaintiff requested FMLA leave, but there were no responses to his requests. (*Id.* at ¶ 155)

Plaintiff sent emails to Sinners on November 2, 3, and 4, 2015 regarding his FMLA request. (*Id.* at ¶¶ 156-58) On November 4, 2015, Sinners sent Plaintiff an email and charged him as "being AWOL." (*Id.* at ¶ 159) Throughout early November 2015, Plaintiff and Sinners exchanged emails regarding Plaintiff's employment status, his EEOC charge of discrimination, and his claim that Sinners retaliated against him for filing the charge. (*Id.* at ¶¶ 160-67)

5

Plaintiff alleges that as a result of Defendants' actions his job performance has dropped, he has been subjected to race discrimination and harassment, a hostile work environment, and retaliation, he has missed educational job opportunities, and his future earning capacities have been damaged. (*Id.* at ¶¶ 168-88) Plaintiff seeks compensatory and punitive damages, as well as injunctive relief.

Plaintiff received a right to sue letter from the EEOC on or about March 24, 2016. He commenced the instant case on October 24, 2016. (*Id.* at ¶ 69) The Court was not provided with a copy the charge of discrimination or the right to sue letter.

### III. LEGAL STANDARDS

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff.[1] *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Under 28 U.S.C. § 1915(e)(2)(B)(i), a court may dismiss a complaint as frivolous if it is "based on an indisputably meritless legal theory" or a "clearly baseless" or "fantastic or delusional" factual scenario. *Neitzke*, 490 at 327-28; *see also Wilson v. Rackmill*, 878 F.2d 772, 774 (3d Cir. 1989).

---

[1]As discussed above, Plaintiff is an attorney, licensed in the State of Pennsylvania.

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) is identical to the legal standard used when deciding Rule 12(b)(6) motions. *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999) (applying Fed. R. Civ. P. 12(b)(6) standard to dismissal for failure to state claim under § 1915(e)(2)(B)). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. § 1915, the Court must grant a plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A complaint may be dismissed only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Though "detailed factual allegations" are not required, a complaint must do more than simply provide "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (internal quotation marks omitted). In addition, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *See Williams v. BASF Catalysts LLC*, 765 F.3d 306, 315 (3d Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) and *Twombly*, 550 U.S. at 570). Finally, a plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, __U.S.__, 135 S.Ct. 346, 347 (2014). A complaint may not dismissed for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 346.

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are

7

not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *See Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

In addition to the pleading requirements of *Iqbal* and *Twombly*, the Court has the power to dismiss a complaint that fails to comply with Rule 8 of the Federal Rules of Civil Procedure. *See Ala' Ad–Din Bey v. United States Dep't of Justice*, 457 F. App'x 90, 91 (3d Cir. Jan. 11, 2012) (affirming district court's dismissal). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Each averment must be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "Taken together," Rules 8(a) and 8(d)(1) "underscore the emphasis placed on clarity and brevity by the federal pleading rules." *In re: Westinghouse Sec. Litig.*, 90 F.3d 696, 702 (3d Cir. 1996) (citation omitted). Dismissal pursuant to Rule 8 has been found warranted where a complaint is rambling, unclear, and/or unwieldy. *See, e.g., Tillio v. Kent*, 477 F. App'x 881, 882 (3d Cir. Sept. 6, 2012). Dismissal under Rule 8 has also been held proper when a complaint "left the defendants having to guess what of the many things discussed constituted [a cause of action]." *Binsack v. Lackawanna Cnty. Prison*, 438 F. App'x 158 (3d Cir. July 21, 2011).

8

## IV. DISCUSSION

### A. Pleading Deficiencies

As noted, the Amended Complaint names 24 Defendants, consists of 729 paragraphs, and contains 30 Counts. It runs to 140 pages. Counts I-XI, XIII, XIV, XXVI-XXIX specifically name Defendants Sinners, Anstead, Martel, Shannon Melito, Susan Bean, Komenda, Quackenbush, Donna J. Kramer, Mia T. Sylve ("Sylve"), Strauch,[2] Frank Achike ("Achike"), Genia R. Wells, Furnas, and Brown. Some of the Counts are directed against Defendants without identifying an particular defendant (Counts XII, XXX); while other Counts are not directed towards any defendant (Counts XV-XXV). There are no Counts directed towards Defendants John Reiter, Dietra Grant ("Grant"), Todd L. Harber ("Harber"), Anita Brown, Suzanne Ooley ("Ooley"), John Koskinen ("Koskinen"), or Jacob L. Lew ("Lew").[3] Although the Amended Complaint appears to state claims under the FTCA and the FMLA, as it now stands it is unwieldy, and difficult, if not impossible for Defendants to respond to its allegations. Therefore, the Court will dismiss the Amended Complaint.

In addition, the Amended Complaint attempts to raise claims against a number of defendants in their individual and official capacities. Most Defendants are named as IRS employees and one is named as a Department of the Treasury employee. The only proper defendant in a Title VII case is the employer. *See Foxworth v. Pennsylvania State Police*, 2005 WL 840374, at *4 (E.D. Pa. Apr. 11, 2005), *aff'd*, 228 F. App'x 151 (3d Cir. Feb. 1, 2007). A suit against a defendant in his or her official capacity is simply another way to sue the defendant's employing entity. *See Clarke v. Whitney*, 907 F. Supp. 893, 895 (E.D. Pa. 1995); *see In re Montomgery Cnty.*, 215 F.3d 367, 372 (3d Cir. 2000)

---

[2]Strauch is named in the caption of the Amended Complaint, but is not identified as a defendant in "Section II. The Parties."

[3]Koskinen and Lew are named in the caption of the Amended Complaint, but are not identified as defendants in "Section II. The Parties."

(under Title VII, a public official may be held liable in his or her official capacity only). Finally, under Title VII, civil actions against federal employers must be brought against "the head of the department, agency, or unit, as appropriate." 42 U.S.C. § 2000e-16(c). Accordingly, to the extent Plaintiff seeks to raise Title VII claims against any Defendant in his or her individual capacity, the claims fail as a matter of law and will be dismissed. *See Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1077-78 (3d Cir. 1996) (individual employees cannot be held liable under Title VII). To the extent Plaintiff attempts to raise Title VII claims against Defendants in their official capacities, the proper defendant is the head of Plaintiff's department, agency, or unit.

Further, Plaintiff did not provide the Court with a copy of his right to sue letter from the EEOC, which he apparently received on or about March 24, 2016. Plaintiff commenced this action on October 24, 2016, over 200 days later. A claim brought under Title VII must be filed within ninety days of a plaintiff's receipt of the notice of suit rights letter. *See* 42 U.S.C. § 2000e–5(f)(1); *McGovern v. City of Phila.*, 554 F.3d 114, 115 n.1 (3d Cir. 2009). While statute of limitations ordinarily must be raised as an affirmative defense, and is subject to principles of waiver if not timely asserted, a district court has authority to dismiss an *in forma pauperis* complaint *sua sponte* under § 1915(e) if the limitations defense is obvious from the complaint, and if no development of the factual record is required. *See Carter v. Keystone*, 360 F. App'x 271, 272-73 (3d Cir. Jan. 13, 2010) (affirming *sua sponte* dismissal of Title VII action when face of complaint plainly indicated complaint was filed well after expiration of ninety-day period to bring suit). Hence, based upon the allegations in the Amended Complaint, it appears that the Title VII claims were not timely filed. *See Edwards v. Bay State Mill. Co.*, 519 F. App'x 746, 748 (3d Cir. Apr. 2, 2014) (Title VII claims dismissed when employee failed to file employment discrimination complaint within 90 days of receiving EEOC notice of right to sue as required under Title VII).

10

Based upon the foregoing, the Court will dismiss the Title VII claims for failure to state claims upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Because the Court was not provided with the right to sue letter and it is not evident that the Title VII claims are time-barred, Plaintiff will be given leave to amend the Title VII claims. Plaintiff will be ordered to attach copies of his charge or charges of discrimination and the right to sue letter together with the filing of any future amended complaint.

Also, the Amended Complaint invokes 42 U.S.C. § 1981. In reviewing the Amended Complaint it appears that, other than security officers Furnas and Brown, Defendants are officials operating under color of federal law. As discussed by the Third Circuit:

> By its terms, § 1981 provides a private cause of action for discrimination by private actors and discrimination under color of state law. *See* § 1981(a), (c). Defendant, as an official of the Department of Education, was operating under color of federal law, and § 1981 does not protect against discrimination under color of federal law. *See, e.g., Dotson v. Griesa*, 398 F.3d 156, 162 (2d Cir. 2005); *Davis-Warren Auctioneers v. FDIC*, 215 F.3d 1159, 1161 (10th Cir. 2000); *Davis v. United States Dep't of Justice*, 204 F.3d 723, 725 (7th Cir. 2000); *Lee v. Hughes*, 145 F.3d 1272, 1277 (11th Cir. 1998).

*Sindram v. Fox*, 374 F. App'x 302, 304 (3d Cir. Feb. 19, 2010). Therefore, the Court will dismiss the § 1981 claims.

The Amended Complaint attempts to raise claims under the APA while at the same time alleging violations of Plaintiff's constitutional rights and raising Title VII race employment discrimination claims. Plaintiff alleges a violation of 5 U.S.C. § 706(1) for unlawfully withholding or unreasonably delaying agency action. However, given the numerous actions alleged in the Amended Complaint, it is difficult to discern to which alleged action this claim is directed. To the extent Plaintiff refers to a decision by the Merit Systems Protection Board ("MSPB"), the APA explicitly provides that a claim of discrimination on the basis of race, color, religion, sex, or national origin is

11

an affirmative defense to any adverse personnel action taken by an agency. *See* 5 U.S.C. §§ 2302(b), 7701(c)(2). While a petition to review a final order of the MSPB usually is filed in the Federal Circuit, *see* 5 U.S.C. § 7703(b)(1), the procedure changes when an employee raises a discrimination claim before the MSPB – even as an affirmative defense. The APA provides that discrimination claims shall be filed under Title VII, *see* 5 U.S.C. § 7703(b)(2), and an affirmative defense of discrimination raised under § 7701(c)(2), therefore, is properly appealed to the district court as a Title VII claim. *See* 29 C.F.R. § 1614.310(b). Given its lack of clarity, the Court will dismiss the APA claim.

The Amended Complaint also refers to 42 U.S.C. § 1983. When bringing a § 1983 claim, a plaintiff must allege that some person has deprived him of a federal right, and that the person who caused the deprivation acted under color of state law. *See West v. Atkins,* 487 U.S. 42, 48 (1988). The Court will dismiss the § 1983 claims as the Amended Complaint does not named any State Actors and, therefore, the § 1983 claims are not cognizable.[4]

Finally, the Amended Complaint raises "federal law defamation claims" against security officers Furnas and Brown. (D.I. 15 at Count XXVI) It does not appear that Furnas or Brown are state or federal actors. "There is no federal constitutional right to reputation, and violations of state law, including defamation, are insufficient to state a claim under § 1983." *Kulwicki v. Dawson,* 969 F.2d 1454, 1468 (3d Cir. 1992). The Court concludes that the same is true for *Bivens* claims, the

---

[4]Where a litigant sues federal actors for damages on constitutional grounds, the claim is governed by *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 389 (1971). In *Bivens,* the Supreme Court created a federal tort counterpart to the remedy created by 42 U.S.C. § 1983 as it applies to federal officers. To state a claim under *Bivens,* a claimant must show: (1) a deprivation of a right secured by the Constitution and laws of the United States; and (2) that the deprivation of the right was caused by an official acting under color of federal law. *See Mahoney v. National Org. for Women,* 681 F. Supp. 129, 132 (D. Conn. 1987) (citing *Flagg Brothers, Inc. v. Brooks,* 436 U.S. 149, 155-56 (1978)).

12

federal tort counterpart of § 1983 claims. Hence, to the extent Plaintiff seeks to raise § 1983 or *Bivens* claims against Furnas and Brown, the defamation claims fail, and they will be dismissed. For alleged defamation, Plaintiff's remedy lies under State law.

**B.    Miscellaneous Motions**

Plaintiff has filed a number of motions, all of which will be denied by the Court. Plaintiff's motion to amend (D.I. 13) contains insufficient information regarding the proposed amendment and his proposed third amended complaint attached to his most recent motion for leave to amend (D.I. 31) does not cure the pleading defects discussed above. Plaintiff requests a waiver of service of process fees in conjunction with the motion for leave to file a third amended complaint. The request (D.I. 31) will be denied without prejudice as service is not appropriate at this time.

Plaintiff has also filed a number of motions to compel Defendants to answer the Second Amended Complaint and discovery requests. (D.I. 16, 18, 19, 20, 21, 22, 23). The motions will be denied. The complaint is being dismissed (with the possibility of amendment), Defendants have not been served, and discovery has not commenced.

Plaintiff served Defendants Quackenbush, Harber, Achike, Grant, and Sylve with requests for admissions. (D.I. 24-28) In early January of this year, Plaintiff filed notices that the foregoing Defendants had not responded to the requests for admissions and asked the Court to take note that the first set of requests for admissions are deemed admitted. Plaintiff served discovery prior to screening of his Amended Complaint, prior to service of an operative pleading, and prior to commencement of discovery. Therefore, the Court finds, and will order, that the first set of requests for admissions are deemed not admitted.

Plaintiff has also moved for entry of default and for default judgment. (D.I. 29, 30) Given the procedural status, including that Defendants have not been served with a complaint, these

13

motions are premature. *See* Fed. R. Civ. P. 55. Entry of default and default judgment are not appropriate. Therefore, the motions will be denied.

Finally, Plaintiff filed an emergency motion for preliminary injunction. (D.I. 33) The motion refers to employment actions taken against Plaintiff, including two notices for the dismissal of Plaintiff; one on January 20, 2016 and one on December 8, 2016. Plaintiff asserts that, on January 17, 2017, "Management violated [his] contractual rights pursuant to the National Agreement between the NTEU and the Internal Revenue Service, Article 12, Section 4(C)(2)(2)(F)." (D.I. 33 at 3) On January 29, 2017, Ooley advised Plaintiff that she was "persuaded that there are no discriminatory motives for the action. A nondiscriminatory reason for the action is that your performance is not at an acceptable level of competence." (*Id.* at 4) Plaintiff asserts that Ooley is violating his constitutional rights "in making all of her decisions concerning Plaintiff's property rights in federal employment." (*Id.*)

A preliminary injunction is "an extraordinary remedy that should be granted only if (1) the plaintiff is likely to succeed on the merits; (2) denial will result in irreparable harm to the plaintiff; (3) granting the injunction will not result in irreparable harm to the defendant; and (4) granting the injunction is in the public interest." *NutraSweet Co. v. Vit-Mar Enterprises, Inc.*, 176 F.3d 151, 153 (3d Cir. 1999). "[F]ailure to establish any element in [a plaintiff's] favor renders a preliminary injunction inappropriate." *NutraSweet II*, 176 F.3d at 153.

As discussed above, the Amended Complaint fails to state claims for Title VII violations and, therefore, the Court concludes that Plaintiff is not likely to succeed on the merits. Additionally, assuming Plaintiff were likely to succeed on the merits, the harms he alleges does not rise to irreparable injury. *See e.g., Sampson v. Murray*, 415 U.S. 61, 91-92 (1974) (loss of income and damage to reputation as result of being discharged from employment not sufficient to establish irreparable

14

injury); *see also Moteles v. University of Pennsylvania*, 730 F.2d 913, 919 (3d Cir. 1984) (discussing *Sampson*). Accordingly, the Court will deny Plaintiff's motion for injunctive relief. (D.I. 33)

## V. CONCLUSION

For the above reasons, the Court will: (1) dismiss the complaint for failure to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii); (2) give Plaintiff leave to file another amended complaint to cure the pleading deficiencies as set forth in this memorandum; (3) deny Plaintiff's motion to amend (D.I. 13) and motion for leave to amend and for service (D.I. 31); (4) deny Plaintiff's motions to compel (D.I. 16, 18, 19, 20, 21, 22, 23); (5) order that Plaintiff's first set of requests for admissions are deemed not admitted (D.I. 24, 25, 26, 27, 28); (6) deny Plaintiff's motion for entry of default and for default judgment (D.I. 29, 30); and (7) deny Plaintiff's motion for a preliminary injunction (D.I. 33).

An appropriate Order follows.